| | | |
|---|---|---|
| ELEVAT3, LLC, A TEXAS LIMITED LIABILITY COMPANY | § | |
| PLAINTIFF | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:20-CV-1387 |
| | § | |
| | § | |
| HARZAND INVESTMENTS, LLC, A TEXAS LIMITED LIABILITY COMPANY; AMSA VENTURES, LLC, A TEXAS LIMITED LIABILITY COMPANY; FARID MEGHANI; NOORALI MEGHANI; AND ANTHONY ALI. | § | |
| DEFENDANTS | § | |

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Plaintiff, **ELEVAT3, LLC** ("**Plaintiff**") and files this Verified Original Complaint, respectfully showing unto the Court as follows:

## I. PARTIES

1. Elevat3, LLC (referred to herein as "**Elevat3**"), is a Texas limited liability company authorized to conduct business in Texas with a principal place of business at 1107 S. General McMullen Dr., San Antonio, Texas 78237.

2. Harzand Investments, LLC ("**Harzand**") is a Texas limited liability company that may be served with process by serving its registered agent, Farid Meghani, located at 85 N.E. Loop 410, Suite 203, San Antonio, Texas 78216, or wherever else he may be found.

3. AMSA Ventures, LLC ("**AMSA**") is a Texas limited liability company that may be served with process by serving its registered agent, Anthony Ali, located at 2234 Opal Creek, San Antonio, Texas 78232, or wherever else he may be found.

4. Farid Meghani ("**Farid**") is an individual residing in Bexar County, Texas and may be served with process at any of the following addresses: (1) 25903 Big Cypress, San Antonio, Texas 78261; or (2) or at such other place where he may be found.

5. Noorali Meghani ("**Noorali**") is an individual residing in Bexar County, Texas and may be served with process at any of the following addresses: (1) 1235 Via Belcanto, San Antonio, Texas 78260; or (2) or at such other place where he may be found.

6. Anthony Ali ("**Anthony**") is an individual residing in Bexar County, Texas and may be served with process at any of the following addresses: (1) 2427 Santiago Way, San Antonio, Texas 78259; or (2) or at such other place where he may be found.

7. Harzand, AMSA, Farid, Noorali, and Anthony are collectively referred to herein as "**Defendants**."

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C §§ 1331 and 1338. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the acts complained of herein occurred in part within the Western District of Texas, San Antonio Division.

## III. STATEMENT OF FACTS AND THE ELEVAT3 TRADEMARK(S)

### A. The Creation and Development of SPINXPRESS

9. Elevat3 is a leader in the modern laundromat business, revolutionizing the standard laundromat experience and priding itself on providing services of the highest quality. Consumers frequently give Elevat3's laundromats five-star ratings and describe the premises as "convenient," "clean" and "modern."[1] To promote these services, Elevat3 is the owner of certain Elevat3

---

[1] https://gospinxpress.com.

trademarks, service marks, trade names, insignia, emblems, slogans, logos, commercial symbols, signs, trade dress, and other visual identification both registered and unregistered with the United States Patent and Trademark Office,[2] by which Elevat3 and SPINXPRESS are identified and publicized, including the goodwill associated with all of them (the "Elevat3 Trademarks" or the "Marks").

10. Since August of 2017, the Elevat3 Trademarks have been used by Elevat3 and its subsidiaries to attract both business and goodwill to its various business locations and ventures (the "Elevat3 Businesses") and marketed extensively in connection with the same.

11. The Elevat3 Businesses are characterized by Elevat3's unique business model and structure, which includes distinctive exterior and interior design, décor, color scheme and furnishings, uniform standards, specifications, procedures for operations; quality and uniformity of services offered including specifically the levels of customer service provided; procedures for inventory and management control; training and assistance, and advertisement and promotional programs.

12. Elevat3 Businesses are known for providing a fresh and innovative approach to the traditional laundromat experience and provide numerous specialized and modern benefits, amenities, and services. Signature and complimentary SPINXPRESS amenities include an entertainment station to entertain yourself and your children while you wait,[3] vending machines providing snacks and other merchandise,[4] and pick up/drop off laundry and dry-cleaning services.[5]

---

[2] *See* Exhibits A; Elevat3 Trademark Registration No. 5,569,845 and A-1; Elevat3 Trademark Application Report.
[3] *See* Exhibit B; Elevat3 Business entertainment station.
[4] *See* Exhibit C; Elevat3 Business vending machines.
[5] *See* Exhibit D; Elevat3 Business website showing services provided.

13.     Currently, there are at least 14 Elevat3 Businesses that exist, operate, or will be coming soon throughout the State of Texas. Elevat3 and its subsidiaries and affiliates have spent large sums of money maintaining, improving, developing, creating, marketing, and promoting the Elevat3 Businesses and cultivating the corresponding goodwill in the State of Texas and plan to expand to other states. As a result of Elevat3's sustained efforts to create, improve, and market its business model and the Elevat3 Businesses, consumers now associate SPINXPRESS with modern, high quality, and innovative laundry and dry-cleaning services and first-class customer service.

**B.      SPINXPRESS' Relationship with the Defendants**

14.     Almost three (3) years ago, Elevat3's manager, Bhavin Patel ("Mr. Patel"), and other Elevat3 personnel met with Farid, Noorali, and Anthony to discuss the Elevat3 Businesses and the Elevat3 Trademarks, specifically SPINXPRESS (collectively, the "Competitors' Infringement Meetings"). During one of these meetings, Defendants threatened the Elevat3 Businesses by declaring that, "this is war" and promising to try and put Elevat3 out of business by opening locations in the same general area. After this initial confrontation, Mr. Patel again met with Defendants and the parties stated their intent to not open locations near each other and/or infringe upon the Elevat3 Businesses as the same continue to grow and expand. Interestingly, during one of the Competitors' Infringement Meetings, Defendants expressly complimented the Elevat3 Businesses and the SPINXPRESS mark by noting the beauty of the stores—demonstrating that Defendants had no doubt about which stores were Elevat3 Businesses. Elevat3 has aggressively expanded throughout the State of Texas, building up substantial goodwill and establishing the Elevat3 Businesses as prominent, high-quality providers of laundry services.

15.     Despite the intent at the Competitors' Infringement Meeting, Defendants have clearly and intentionally infringed on the Elevat3 Trademarks, specifically SPINXPRESS, by not

only building and opening at least one location near the Elevat3 Businesses, but by actively converting older locations to look like the Elevat3 Businesses. Specifically, Defendants actually and intentionally designed the Infringing Location located at 1100 Fredericksburg Road, San Antonio, Texas 78201 by using a logo and name that is nearly identical to the Elevat3 Trademarks, specifically SPINXPRESS, and a retail layout and design in the same trade dress as the Elevat3 Businesses in an attempt to capitalize and trade on Elevat3's hard-won goodwill (the "Infringing Location"). In addition to the Infringing Location, Defendants' website indicates that their location at 4057 Medical Drive, San Antonio, Texas 78229 is also advertised under "LaundryXpress" (the "Additional Infringing Location"). Furthermore, Mr. Patel has become aware that Defendants have begun converting and rebranding the Additional Infringing Location under "LaundryXpress," which is clear evidence that Defendants are actively rebranding their locations in order to continue to trade off of and financially benefit from the Elevat3 Businesses' goodwill.[6]

1.    Exterior Infringement

16.    Specifically, the *exterior* of the Infringing Location: (1) uses the same lime green, electric blue, and grey and white color scheme and layout;[7] (2) uses the name "LaundryXpress" in the same or similar font and design as SPINXPRESS;[8] and (3) advertises the same services and amenities as the Elevat3 Businesses.[9] In fact, the "LaundryXpress" logo is so similar to the SPINXPRESS logo that: (1) two disinterested subcontractors; (2) Elevat3's own Regional Manager; (3) an Elevat3 customer; and (4) a disinterested passerby named Roshan Bhakta thought

---

[6] *See* Exhibit E; Defendants' website for Infringing Location.
[7] *See* Exhibit F; Images of an Elevat3 Business and the Infringing Location.
[8] *See* Exhibit G; Images of the signs for an Elevat3 Business and the Infringing Location.
[9] *Compare* Exhibits H; Elevat3 Business website with H-1; Defendant's website.

the Infringing Location and the Additional Infringing Location were actually new Elevat3 Businesses, causing actual confusion in the marketplace.

| Elevat3's Exterior | Infringing Location's Exterior |
|:---:|:---:|
|  |  |

2. Interior Infringement

17. Additionally, the *interior* of Defendants' Infringing Location is substantially similar so as to cause, and has caused, confusion in the marketplace. Specifically, the Infringing Location: (1) is set up in the same or substantially similar method and manner;[10] (2) has the same or substantially similar layout and general decorations as the Elevat3 Businesses;[11] (3) uses the same or substantially similar colors of lime green, electric blue, and grey and white accents;[12] (4) features the same or similar "Fun Zone" for the children using the same or similar rainbow color motif with the same or similar lime green stools for sitting;[13] (5) has a "soap center" or "attendant station" in the same or substantially similar layout and color scheme that will include merchandise

---

[10] *Compare* Exhibits I; Elevat3 Business layout with I-1 and I-2; Infringing Location layout.
[11] *See* Exhibit J; images of Plaintiff's "Fun Zone" and Infringing Location's "Fun Station.".
[12] *See* Exhibit K; images of Plaintiff's and Infringing Location's attendant station.
[13] *See* Exhibit J; images of Plaintiff's "Fun Zone" and Infringing Location's "Fun Station."

of the same or similar nature as the Elevat3 Businesses[14] and the same or similar lime green benches throughout the store; (6) has the same or similar "reloading" station for the specific laundromat card and to break bills;[15] and (7) features the same or similar equipment and amenities.[16]

| Elevat3's Fun Zone | Infringing Location's "Fun Station" |
|:---:|:---:|
|  |  |

---

[14] *Compare* Exhibits L; Plaintiff's soap center with L-1; Infringing Location's soap center.
[15] *See* Exhibit M; images of Plaintiff's and Infringing Location's reloading station.
[16] *Compare* Exhibits I; Elevat3 Business layout with I-1 and I-2; Infringing Location layout.

 

**Elevat3's Attendant Station**          **Infringing Location's Attendant Station**







**Elevat3's Reloading Station**          **Infringing Location's Reloading Station**

> 3.    <u>Additional Intentional Acts</u>

18.    At the time of the Competitors' Infringement Meetings, Defendants owned and operated laundromats by the name of "Speedy Wash," "Spin City Lavanderia," and "Sudsy's Coin Laundry" (collectively, "Defendants' Laundromats"). Defendants' Laundromats all operate under the ownership of one or all Defendants.

19.     Defendants' Laundromats all appear on Defendants' website of https://www.thelaundryxpress.com. Searching the address of each laundromat in Google shows that each location carries a different prior name than "LaundryXpress," and upon information and belief, this shows Defendants' plan to intentionally trade off of the SPINXPRESS name and other Elevat3 Trademarks and plan to convert all current locations to LaundryXpress. Furthermore, the Additional Infringing Location is actual evidence of Defendants' plan to convert all current/possible future locations in a manner which has, and which will continue to cause, confusion in the marketplace.

20.     Finally, and as evidenced by the Additional Infringing Location, Defendants have converted or are in the process of converting Defendants' Laundromats to new laundromats carrying the name "LaundryXpress" (the "Infringing Trademark"). In fact, a Facebook post on the Sudsy's Coin Laundry Facebook page advertises a position to hire for a part-time laundry attendant at their "new location The Laundry Xpress on 1110 [sic] Fredericksburg Rd."[17] A comment by the author and owner of the page Sudsy's Coin Laundry posts "Yes, here is our website. Thelaundryxpress.com." This shows Defendants intend to change all of their locations to use the Infringing Trademark and trade dress and that change is imminent.

**C.     The Confusion with the Elevat3 Trademark(s)**

21.     There have already been instances of actual confusion regarding the Elevat3 Trademarks and the Infringing Trademark in a very short time. Specifically, between August and November 2020: (1) Robert Roy, Plaintiff's Regional Manager; (2) a disinterested subcontractor, David Paz; (3) a disinterested passerby, Roshan Bhakta; (4) Ramiro Esteves, a vending and game machine subcontractor; and (5) Pearl Martinez, a customer of SpinXpress and former employee of

---

[17] *See* Exhibit N; Defendant's Facebook job post for Sudsy's Coin Laundry.

the Infringing Location, separately discovered and were confused by both the Infringing Location and the Additional Infringing Location. Regarding the Infringing Location: (1) Mr. Roy was driving by and thought it was a new Elevat3 Business he was unaware of; (2) Mr. Paz discovered the Infringing Location when he was attempting to install some laundry equipment for Plaintiff and walked into the Infringing Location, only to realize he was in the wrong place; (3) Mr. Esteves inquired about not receiving the business to install vending and game machines in what he thought was a new Elevat3 Business but was instead the Infringing Location; and (4) Ms. Martinez initially believed she was applying to work for Elevat3 but found out after being hired that the Infringing Location was owned by Defendants. Mr. Roy and Mr. Paz called Mr. Patel and asked if this was a new Elevat3 Business, while Mr. Esteves inquired via text message. Regarding the Additional Infringing Location, Mr. Bhakta was driving by and thought that the Additional Infringing Location was actually a new Elevat3 Businesses causing actual confusion in the marketplace. When Mr. Patel investigated these matters, he realized that the Infringing Location and the Additional Infringing Location were basically identical to the Elevat3 Trademarks, specifically SPINXPRESS, and the Elevat3 Businesses. After further investigation, Mr. Patel also realized that the Infringing Location and the Additional Infringing Location were owned by the Defendants and knew the Defendants intentionally copied the Elelvat3 Businesses/Elevat3 Trademarks to capitalize on the goodwill associated with the SPINXPRESS name. Defendants have no license agreement with Plaintiff, nor any other authority, to copy or otherwise utilize Plaintiff's layout or to capitalize or attempt to capitalize on the goodwill associated with the SPINXPRESS name or model.

22.    As such, Defendants' Infringing Location and Additional Infringing Location have already caused actual confusion to employees and third parties and are expected to continue to

cause consumer and general confusion in the marketplace to the detriment of Elevat3, and Defendants will improperly benefit from the goodwill associated with the SPINXPRESS brand if Defendants are permitted to continue operating the Infringing location, to open and operate the Additional Infringing Location, and to continue to convert and open the other locations.

<h3 style="text-align:center">IV. <span style="font-variant:small-caps">Causes of Action</span></h3>

23.     All conditions precedent to Plaintiff's recovery have occurred or have been waived, excused, or otherwise satisfied. All notices required have been provided or were waived, excused, or otherwise satisfied.

24.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 – 23.

### A.  Violations of 15 U.S.C. §§ 1114

25.     Defendants have opened and begun operating the Infringing Location. Defendants have further begun the process of converting and rebranding the Additional Infringing Location. Plaintiff has registered the Elevat3 Trademarks with the United States Patent and Trademark Office and has consistently advertised the Elevat3 Trademarks. Defendants have no right to use the Elevat3 Trademarks. Defendants have no right to use a name that is confusingly similar to the Elevat3 Trademarks. Defendants have no right to use a sign design, color scheme, and general setup/layout that is confusingly similar to the Elevat3 Trademarks.

26.     Defendants' unauthorized use and display of Plaintiff's trademarks, trade names, and trade dress constitutes willful and intentional infringement of the trademarks in violation of Sections 32 of the Lanham Act, 15 U.S.C. § 1114. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive, and therefore constitutes an exceptional case/infringement.

27.     Plaintiff will suffer irreparable harm to its business model, the SPINXPRESS name, brand, and customer goodwill each day that Defendants wrongfully suggest an association between

their independent laundry facility(ies), and the Elevat3 Businesses. A dissatisfied customer of the Defendants' Infringing Location or Additional Infringing Location will incorrectly attribute that dissatisfaction to Plaintiff and the SPINXPRESS name/model impacting future business at the Elevat3 Business locations. This will also impact Plaintiff's ability to open new or additional locations in the areas of the Infringing Location or Additional Infringing Location as it will have lost some of its established customer base and goodwill. Plaintiff requires immediate injunctive relief to prevent Defendants from continuing to trade off of Plaintiff's name and trademark(s).

28.     Defendants are not affiliated with Plaintiff, and Plaintiff has no control over them, the Infringing Location or the Additional Infringing Location, or their use of the Elevat3 Trademarks. Nor does Plaintiff have any control over the services being offered by Defendants. This will cause additional and significant harm to the goodwill and reputation associated with the Elevat3 Businesses, present and future, and the Elevat3 Trademarks.

29.     To allow a competitor's laundry business, such as Defendants', to confuse the public, and even Plaintiff's own Regional Manager, as to its affiliation/relationship with Plaintiff jeopardizes the integrity, goodwill, and reputation of SPINXPRESS and Plaintiff. Therefore, Defendants' continuing, wanton, deliberate, and fraudulent use of marks that are the same or substantially similar to SPINXPRESS, their operation of the Infringing Location, and future operation of the Additional Infringing Location and any other location in the future, is likely to continue to cause and has caused deception, confusion, and mistake, among the relevant consumers/public as to the source of the services, and has caused, or will further cause irreparable harm to Plaintiff and the Elevat3 Trademarks. Plaintiff has no adequate remedy at law to protect its substantial business and property rights, and the only meaningful relief is an injunction

enjoining Defendants from continuing to unlawfully and wrongfully infringe upon Plaintiff's business and the Elevat3 Trademarks.

30. Plaintiff seeks judgment against Defendants, jointly and severally, for damages, including lost profits; disgorgement of the profits of Defendants; treble damages; additional damages as may be just according to the circumstances of this action; attorneys' fees; costs of the action; and any other remedy available under the statute. Plaintiff is entitled to and seeks preliminary and permanent injunctive relief preventing Defendants from further infringement of the Elevat3 Trademarks, plus costs, disbursements, interest and attorneys' fees.

**B. <u>Violations of 15 U.S.C. § 1125</u>**

31. Defendants' use-in-commerce of the Elevat3 Trademark(s) without Plaintiff's consent, and use-in-commerce of the confusingly similar "LaundryXpress" trade name, is likely to confuse and has confused, or deceive or has deceived, the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive and therefore constitutes an exceptional case/infringement.

32. Plaintiff will suffer irreparable harm to its busines model and the SPINXPRESS name and brand and customer goodwill each day that Defendants wrongfully suggest an association between their independent laundry facility, and the Elevat3 Businesses. A dissatisfied customer of the Defendants' Infringing Location or Additional Infringing Location will incorrectly attribute that dissatisfaction to Plaintiff and the SPINXPRESS name/model impacting future business at the Elevat3 Business locations. This will also impact Plaintiff's ability to open new or additional locations in the area of the Infringing Location or Additional Infringing Location as it will have lost some of its established customer base and goodwill. Plaintiff requires immediate

injunctive relief to prevent Defendants from continuing to trade off of Plaintiff's name and trademark(s).

33.     Defendants are not affiliated with Plaintiff, and Plaintiff has no control over them, the Infringing Location, the Additional Infringing Location, or their use of the Elevat3 Trademarks. Nor does Plaintiff have any control over the services being offered by Defendants. This will cause additional and significant harm to the goodwill and reputation associated with the Elevat3 Businesses, present and future, and the Elevat3 Trademarks.

34.     To allow a competitor's laundry business, such as Defendants', to confuse the public, and even Plaintiff's own Regional Manager, as to its affiliation/relationship with Plaintiff jeopardizes the integrity, goodwill, and reputation of SPINXPRESS and Plaintiff. Therefore, Defendants' continuing, wanton, deliberate, and fraudulent use of marks that are the same or substantially similar to SPINXPRESS and future operation of: (1) the Infringing Location; (2) the Additional Infringing Location; and (3) any other location in the future, is likely to continue to cause and has caused deception, confusion, and mistake, among the relevant consumers/public as to the source of the services, and has caused, or will further cause irreparable harm to Plaintiff and the Elevat3 Trademarks. Plaintiff has no adequate remedy at law to protect its substantial business and property rights, and the only meaningful relief is an injunction enjoining Defendants from continuing to unlawfully and wrongfully infringe upon Plaintiff's business and the Elevat3 Trademarks.

35.     Plaintiff seeks judgment against Defendants, jointly and severally, for damages, including lost profits; disgorgement of the profits of Defendants; treble damages; additional damages as may be just according to the circumstances of this action; attorneys' fees; costs of the action; and any other remedy available under the statute. Plaintiff is entitled to, and seeks,

preliminary and permanent injunctive relief preventing Defendants from further infringement of the Elevat3 Trademarks, plus costs, disbursements, interest and attorneys' fees.

### C. <u>Trade Dress Infringement and Violations of 15 U.S.C. § 1125</u>

36.     Defendants have infringed on Plaintiff's trade dress by using Plaintiff's businesses' distinctive and well-known internal layout and setup, external and interior signage, external and interior signage design and colors, general color scheme, and internal decorations and furnishings, without Plaintiff's permission or other authority. In fact, Farid, Noorali, and Anthony even agreed not to take actions that could confuse Defendants' business with Plaintiff's business at the Competitors' Infringement Meeting.

37.     Defendants' improper and unauthorized use of trade dress that is identical and/or substantially similar to cause confusion, mistake, or deceive the public as to affiliation, connection, or association of the Infringing Business with the Elevat3 Businesses. Such adoption of Plaintiff's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

38.     Most disturbingly, Defendants' acts of using Plaintiff's distinctive trade dress, layout/setup, colors, and signage were done knowingly and intentionally to cause confusion, mistake, or to deceive as indicated by comments made at the Competitors' Infringement Meeting.

39.     Plaintiff will suffer irreparable injury that cannot be compensated and will incur monetary damages in an amount that has yet to be determined. Plaintiff has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are/will be considerable and continuing and thus not capable of ascertainment at this time. Therefore, Plaintiff is entitled to preliminary and permanent injunctive relief preventing Defendants' trade dress infringement, plus cost, disbursements, interest and attorneys' fees.

**D. False Designation of Origin and Federal Unfair Competition and Violations of 15 U.S.C § 1125**

40.     Defendants have infringed Plaintiff's rights by using the Elevat3 Trademarks, without authority by using the confusingly similar "LaundryXpress" trade name. Defendants are using the Elevat3 Trademarks and confusingly similar trade name as part of their laundromat signage and in the operation of their business.

41.     Due to Defendants' infringement and conduct, consumers are likely to be confused and induced into patronizing Defendants' laundromat(s) in the belief that the goods and services are delivered by an authorized representative, affiliate, or other associate of Plaintiff for so long as they continue to operate as is.

42.     Defendants' actions constitute unfair competition in violation of 15 U.S.C. § 1125(a) and common law.

43.     Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

44.     Plaintiff will suffer irreparable injury that cannot be compensated and incur monetary damage in an amount that has yet to be determined. Plaintiff has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time. Plaintiff is entitled to preliminary and permanent injunctive relief preventing Defendants' unfair competition, plus costs, disbursements, interest and attorneys' fees.

**E. Piercing the Corporate Veil**

45.     Harzand's and AMSA's corporate veils should be pierced and Farid, Noorali, and Anthony should be held individually, jointly and severally, responsible and liable for the infringement of the Elevat3 Trademark(s). Harzand's and AMSA's veils should be pierced

because: (1) Harzand and AMSA were organized and operated as a mere tool or business conduit of Farid, Noorali, and Anthony; (2) Harzand and AMSA were used to evade an existing legal obligation not to infringe on others', specifically Plaintiff's, marks and to engage in unfair competition; (3) Harzand and AMSA were used to circumvent a statute, i.e., 15 U.S.C. §1125(a); and (4) Harzand and AMSA were used to protect against the discovery of a wrong, i.e., trademark infringement or unfair competition. All of these improper actions were done for Farid, Noorali, and Anthony's direct personal benefit, i.e., to capitalize and benefit on the goodwill associated with the SPINXPRESS name.

**F. Texas Common Law Unfair Competition and Trademark and Trade Name Infringement**

46.     Plaintiff is the owner of the name "SPINXPRESS" and the Elevat3 Trademarks and is the senior user of the name "SPINXPRESS" and the Elevat3 Trademarks. There is a likelihood of confusion between the name "SPINXPRESS" and the Elevat3 Trademarks, and those Defendants have used. Without limiting the foregoing, Defendants are passing off their services as those of Plaintiffs.

47.     Plaintiff seeks judgment against Defendants, jointly and severally, for damages, including lost profits; disgorgement of the profits of Defendants; treble damages; additional damages as may be just according to the circumstances of this action; attorneys' fees; costs of the action; and any other remedy available under the statute.  In addition, Plaintiff seeks temporary and permanent injunctive relief remedying and preventing further infringement.

## V. INJUNCTIVE RELIEF

48.     Plaintiff requires injunctive relief to prevent Defendants and their officers, agents, servants, employees, and all persons acting on Defendants' behalf, from continuing to improperly appropriate, utilize, and attempt to capitalize off of the Elevat3 Trademarks and otherwise violate

Plaintiff's rights regarding the Elevat3 Trademarks, including Defendants' obligations to: (1) refrain from and cease using the Elevat3 Businesses' distinctive layout, setup, and signage; (2) refrain from and cease copying Plaintiff's signage design and colors; (3) refrain from and cease copying Plaintiff's internal layout, setup, and general color scheme and other trade dress without Plaintiff's permission or other authority; and (4) cease and desist using "LaundryXpress" and any other name, mark, or words that are confusingly similar to SPINXPRESS either alone or in combination with any other words or symbols when referring to Defendants' services or business. In addition, Plaintiff requests mandatory injunctive relief to require Defendants to immediately: (1) take down and reconstruct their external signage and destroy any current signage and/or marketing material using "LaundryXpress" and any other confusingly similar marks ; and (2) change their internal setup, layout, design, and color scheme to distinguish the same from Plaintiff's businesses' trade dress.

49. As such, Plaintiff seeks an order permanently enjoining Defendants, including their agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert participation with them from: (1) using identifying marks that are the same or substantially similar design and color scheme as Plaintiff's so as to cause or potentially cause confusion (and to destroy any current signage and/or marketing material using "LaundryXpress" and any other confusingly similar marks); (2) cease and desist from opening and operating the Infringing Location unless and until Defendants re-do the Infringing Location internal setup, design, layout, and color scheme in a manner that is not confusingly similar with the Elevat3 Businesses; (3) cease and desist the conversion and rebranding of the Additional Infringing Location in a manner that is the same or substantially similar as the Elevat3 Businesses

and re-do any setup, design, layout, and color scheme already started or completed; and (4) cease or refrain from setting up future locations in a similar manner.

## VI. Attorneys' Fees & Costs

50.     Plaintiff respectfully requests that the Court declare this dispute as an "exceptional case" as defined in 15 U.S.C. § 1117(a) because of Defendants' intentional and willful conduct, and therefore find and order that Plaintiff is entitled to recover all its reasonable attorneys' fees and costs.

## VII. Prayer

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that the Court enter final judgment against Defendants and award Plaintiff all relief requested herein, including, but not limited to, a declaration on the items set forth herein, permanent and mandatory injunctive relief, exemplary damages, and all such other and further relief, both general and special, at law or in equity, to which Plaintiff may be entitled.

Respectfully submitted,

**PATEL GAINES, PLLC**
2030 N Loop 1604 W, Suite 200
San Antonio, Texas 78248
www.patelgaines.com
(210) 460-7787 | Telephone
(210) 460-7797 | Facsimile

By: _____*/s/ Grant M. Gaines*_____
      Grant M. Gaines
      Texas State Bar No. 24074241
      ggaines@patelgaines.com
      A. Jabbar Fahim
      Texas State Bar No. 24084183
      jfahim@patelgaines.com

**ATTORNEYS FOR PLAINTIFF**

| | | |
|---|---|---|
| ELEVAT3, LLC, A TEXAS LIMITED LIABILITY COMPANY | § | |
| PLAINTIFF | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| | § | |
| HARZAND INVESTMENTS, LLC, A TEXAS LIMITED | § | |
| LIABILITY COMPANY; AMSA VENTURES, LLC, | § | |
| A TEXAS LIMITED LIABILITY COMPANY; | § | |
| FARID MEGHANI; NOORALI MEGHANI; AND | § | |
| ANTHONY ALI. | § | |
| DEFENDANTS | § | |

## VERIFICATION

I, Bhavin Patel, swear under penalty of perjury that I am Manager of Elevat3, LLC; that I have read the allegations in Paragraphs 1 through 50 of Plaintiff's Verified Original Complaint and that all such allegations are true and correct to the best of my knowledge, information and belief.

Dated: __12/2/2020_____.

ELEVAT3, LLC

By: _____
Bhavin Patel, Manager